Filed 11/25/25  Manueles v. West Coast Drywall & Co. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MARIELA MANUELES, | |
| Plaintiff and Respondent, | G064667 |
| v. | (Super. Ct. No. CVRI2100713) |
| WEST COAST DRYWALL & COMPANY, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Riverside County, Eric A. Keen, Judge. Affirmed in part and reversed in part. Motion to Dismiss. Denied.

Kring & Chung, Kyle D. Kring and Jeffrey T. Green; Blakely Law Offices and John R. Blakely, for Defendant and Appellant.

Employee Justice Legal Group, Kaveh S. Elihu and Steven Berkowitz for Plaintiff and Respondent.

\*     \*     \*

A jury awarded plaintiff Mariela Manueles damages against her former employer, defendant West Coast Drywall & Company, Inc. (West Coast), for pregnancy discrimination, wrongful termination, and related claims. West Coast appeals the trial court's denial of its motion for judgment notwithstanding the verdict (JNOV motion). It contends the court erred in denying the JNOV motion because (1) plaintiff failed at trial to prove she exhausted her administrative remedies before bringing her claims under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.), and (2) there was insufficient evidence to support the jury's award of punitive damages.

We agree the punitive damages award must be set aside because plaintiff failed to introduce evidence of West Coast's financial condition to support the award. We reject West Coast's contention plaintiff had the burden to prove at trial, as one of the elements of her claims under FEHA, that she exhausted her administrative remedies before bringing suit. We reverse the award of punitive damages with directions to the trial court to modify the judgment accordingly and affirm as modified.

FACTS AND PROCEDURAL HISTORY

West Coast is a licensed contractor that provides painting and drywall services. On October 10, 2018, plaintiff was hired by West Coast to work as a paint preparer. She worked for West Coast briefly on a single project in Los Angeles.

Plaintiff filed a complaint against West Coast on February 10, 2021, alleging claims for discrimination, retaliation, failure to prevent

2

discrimination and retaliation, failure to provide reasonable accommodations, failure to engage in a good faith interactive process under FEHA, and wrongful termination in violation of public policy. She also asserted a claim for declaratory relief.

Plaintiff alleged in her complaint she exhausted her administrative remedies by filing a complaint with the California Department of Fair Employment and Housing (DFEH) and receiving a Notice of Case Closure and Right to Sue Letter on February 20, 2020, from the DFEH (right-to-sue letter). West Coast's amended answer alleged plaintiff had failed to exhaust her administrative remedies. Plaintiff produced copies of her administrative complaint and right-to-sue letter in discovery.

Plaintiff's case was tried to a jury from May 31 to June 9, 2023. On May 31, 2023, following plaintiff's opening statement, West Coast moved for a nonsuit on the ground plaintiff had not introduced evidence showing she had exhausted her administrative remedies. The trial court denied the motion. After the close of plaintiff's evidence, West Coast moved again for a nonsuit on the same ground. The court denied that motion, too. After closing arguments, West Coast moved for a directed verdict on the same ground, which the court denied.

On June 9, 2023, the jury returned a verdict in plaintiff's favor on her claims for sex/pregnancy discrimination; failure to prevent harassment, discrimination or retaliation; and wrongful discharge in violation of public policy. The jury found West Coast discharged plaintiff because of her sex/pregnancy or request for accommodations and failed to take reasonable steps to prevent the discrimination. The jury further found plaintiff was harmed as a result and that she had proved "by clear and convincing evidence that [West Coast] acted with malice, oppression, or fraud towards

3

[plaintiff]" and the conduct committing malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of West Coast acting on its behalf. The jury awarded plaintiff compensatory damages of $29,240 and $100,000 in punitive damages. The trial court entered judgment in accordance with the jury's verdict on July 26, 2023. Neither the clerk nor the parties served notice of entry of judgment.

West Coast filed its JNOV motion on September 5, 2023. The trial court denied the motion on March 4, 2024. The court rejected West Coast's argument that plaintiff had the burden to prove exhaustion of administrative remedies at trial, instead concluding the issue is an affirmative defense. The court also found the evidence sufficient to support the jury's award of punitive damages.

West Coast filed its notice of appeal of the order denying the JNOV motion on March 28, 2024. West Coast did not appeal from the judgment.

DISCUSSION

I.

PLAINTIFF'S MOTION TO DISMISS APPEAL

Plaintiff moves to dismiss West Coast's appeal on the ground the JNOV motion was denied by operation of law on November 19, 2023, and West Coast was required to file its notice of appeal within 60 days of that date—i.e., by January 18, 2024. Plaintiff contends that, by the time the trial court ruled on the JNOV motion in March 2024, it no longer had jurisdiction

4

to rule on it, and the order denying the JNOV motion was therefore invalid and cannot be the basis for an appeal.[1] We disagree.

Under section 629, "the court must rule on a JNOV motion by the last date upon which it has the power to rule on a new trial motion. Section 660 sets forth three triggering events for the [75[2]]-day jurisdictional requirement under which a court must rule on a new trial motion. The [75]-day period commences upon the earliest of three events: (1) when the clerk of the court, pursuant to court order, mails notice of entry of judgment; (2) when any party serves written notice of entry of judgment on the moving party; or (3) if no such notice has been previously given, upon the filing of the first notice of intention to move for a new trial." (*Pratt v. Vencor, Inc.* (2003) 105 Cal.App.4th 905, 909 (*Pratt*).)

Here, none of these triggering events occurred. Noone served notice of entry of judgment and West Coast never moved for a new trial or gave notice of an intention to do so. West Coast moved only for JNOV. Therefore, the time within which the trial court could rule on West Coast's JNOV motion did not expire by operation of law. As the court explained in *Pratt, supra,* 105 Cal.App.4th at page 911, there is "no credence to the argument that the Legislature meant for the section 660 time limit

---

[1] Plaintiff concedes (1) West Coast timely filed its JNOV motion following entry of judgment, (2) the denial of a JNOV motion is a separately appealable order under Code of Civil Procedure section 904.1, subdivision (a)(4), and (3) West Coast timely appealed from the order denying the JNOV motion. Unless noted otherwise, all further statutory references are to the Code of Civil Procedure.

[2] Pursuant to Assembly Bill No. 2230 (2017–2018 Reg. Sess.), effective January 1, 2019, the deadlines under section 660 were changed from 60 to 75 days. (Stats. 2018, ch. 317, § 1.)

commencing upon the filing of a notice of intention to move for a new trial to apply to the filing of a notice of a JNOV motion."[3]

We deny the motion to dismiss the appeal.

## II.

## MERITS OF JNOV MOTION

"A [JNOV motion] may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68 (*Sweatman*).) A trial court's discretion in granting a JNOV motion "'is severely limited.'" (*Hansen v. Sunnyside Products, Inc.* (1997) 55 Cal.App.4th 1497, 1510 (*Hansen*).) "'The trial judge cannot reweigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied.'" (*Ibid.*) Although motions for nonsuit, directed verdict, or JNOV are "made at different times, the three motions are analytically the same and governed by the same rules." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750.)

---

[3] In arguing the trial court had to rule on the JNOV motion within 75 days of the date it was filed, plaintiff assumes a JNOV motion is the functional equivalent of a motion for new trial. This argument was squarely rejected in *Pratt*, a case neither party cited. (*Pratt, supra,* 105 Cal.App.4th at p. 907 [section 660 cannot be read to include the filing of a JNOV motion alone—without the filing of a motion for new trial—as an event triggering the running of the 75 days.) "A motion for JNOV is not synonymous with or equivalent to a notice of intention to move for new trial." (*Id.* at p. 911.) Prior to oral argument, we issued an order directing the parties to be prepared to address *Pratt* at argument.

6

On appeal from the denial of a motion for judgment notwithstanding the verdict, we determine whether there is any substantial evidence, contradicted or uncontradicted, supporting the jury's verdict. (*Sweatman, supra*, 25 Cal.4th at p. 68; *Hansen, supra*, 55 Cal.App.4th at p. 1510.) Even the uncorroborated testimony of a single witness may constitute substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.) If there is any substantial evidence, we must affirm the denial of the motion. (*Sweatman,* at p. 68.)

### A.  *Plaintiff's Exhaustion of Administrative Remedies*

Before suing for violation of FEHA, a plaintiff must file a timely and sufficient administrative complaint with the California Civil Rights Department (CRD) (formerly the DFEH). (Gov. Code, § 12960.) "'If, following receipt of a complaint, the [CRD] fails to resolve the case or to file an accusation against the employer within 150 days, it must notify the employee in writing of his or her right to file a civil action under the FEHA. [Citation.] This notification is commonly referred to as a "right to sue" letter.'" (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1345 (*Konad*).)

West Coast contends plaintiff's failure to produce evidence at trial of her exhaustion of administrative remedies on her FEHA claims mandated the granting of its JNOV motion. We disagree.

At the outset, we note West Coast has never argued—either before the trial court or now on appeal—that plaintiff failed to exhaust her administrative remedies prior to filing suit. Indeed, plaintiff alleged exhaustion in her complaint and then produced to West Coast in discovery copies of her administrative complaint and right-to-sue letter. West Coast never challenged plaintiff's exhaustion through a pretrial motion or at trial; thus, it never asked the court to rule on the merits of its affirmative defense

7

and determine plaintiff did not exhaust her administrative remedies. Rather, West Coast claimed at trial only that plaintiff had the burden to prove exhaustion of administrative remedies and failed to do so. As we explain below, there is no merit to West Coast's assertion that a plaintiff must prove exhaustion of administrative remedies as one of the elements of his or her FEHA claims.

Although it is true a plaintiff has the burden to plead and prove timely exhaustion of administrative remedies under FEHA, failure to exhaust administrative remedies is *an affirmative defense* that a defendant waives if it does not raise it in the lower court. (*Konad, supra,* 226 Cal.App.4th at pp. 1345–1346, fn. 3 [exhaustion of administrative remedies not an element of FEHA claims listed in CACI instructions]; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 127, 133–135, disapproved on other grounds in *Lawson v. PPG Architectural Finishes, Inc.* (2022) 12 Cal.5th 703, 718, fn. 2 ["County waived its exhaustion defense by failing to raise it before trial"].) "If a defendant timely presents the issue of whether a FEHA plaintiff has properly presented all claims to the DFEH, a court must decide the merits of this question." (*Konad, supra,* at p. 1347.) It is only at that point—when a defendant contends the plaintiff failed to exhaust administrative remedies *and asks the court to rule on the merits of its defense* (whether at trial or in a pretrial motion)—that plaintiff is required to prove it did, in fact, exhaust its administrative remedies.

Here, West Coast asserted failure to exhaust administrative remedies as an affirmative defense in its answer. But it never asked the trial court to decide the merits of that defense. (See *Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 351, fn. 20 [the defendant "has not cited us to anywhere in the record showing that it asked the trial court to rule on the

merits of its failure to exhaust affirmative remedies defense"]; *Konad, supra,* 226 Cal.App.4th at p. 1348 [noting defendant failed to request dismissal of the FEHA causes of action "based on plaintiff's failure to exhaust"].) Instead, West Coast moved for a nonsuit and directed verdict solely based on plaintiff's *failure to prove* she had exhausted her administrative remedies as part of her case-in-chief.[4] West Coast's contention in its appellate briefing that it raised its "affirmative defense" at least three times at trial is inaccurate and misleading. West Coast never argued to the trial court that plaintiff actually had failed to exhaust her administrative remedies; nor did it ask the court to decide the issue. Instead, West Coast framed the issue solely as a failure of proof.

The trial court properly denied West Coast's JNOV motion on the issue of plaintiff's exhaustion of administrative remedies.

## B. Punitive Damages Award

West Coast contends substantial evidence does not support the jury's award of punitive damages. We agree and conclude the award must be set aside because plaintiff failed to introduce any evidence of West Coast's financial condition. In light of our conclusion, we need not address whether substantial evidence supports the jury's finding that West Coast acted with malice, fraud, or oppression or whether such conduct was committed by one or more officers, directors, or managing agents of West Coast acting on its behalf.

---

[4] At trial, when West Coast moved twice for a nonsuit and then for a directed verdict based on plaintiff's failure to prove she had exhausted her administrative remedies, plaintiff's counsel informed the court there is a right-to-sue letter that has been "part of this case from the beginning." West Coast did not dispute that fact, but continued to insist plaintiff had failed to prove her case because she did not introduce evidence of that fact.

The California Supreme Court has held "an award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109.) "In order for the jury (and the reviewing court) to ascertain whether a punitive damages award is properly calibrated so as to inflict economic pain without financially ruining the defendant, it needs some evidence about the defendant's financial condition and ability to pay the award." (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 192.) Plaintiff has the burden to "ensure that this requirement is satisfied." (*Ibid.*; Evid. Code, § 500.)

In accordance with this law, the jury was instructed to consider West Coast's financial condition to determine the amount "necessary to punish it and discourage future wrongful conduct" and that "any award . . . may not exceed [West Coast's] ability to pay." Although plaintiff failed to introduce any evidence of West Coast's financial condition, the trial court allowed the issue to go to the jury, and the jury awarded $100,000 in punitive damages against West Coast.

In opposing West Coast's JNOV motion, plaintiff argued West Coast waived any right to object to the absence of evidence of its financial condition because she had served West Coast with an Amended Notice to Appear and to Produce Evidence at Trial seeking the production of financial records at trial (the Trial Subpoena), which West Coast ignored.[5] Plaintiff

---

[5] Plaintiff served the Trial Subpoena on the first day of trial. In addition to seeking production of financial records, the Trial Subpoena compelled three witnesses employed by West Coast to testify at trial, including Ricardo Gomez, Desiderio Bernal, and the person most knowledgeable about West Coast's financial condition.

relied on *Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, for the proposition that "a defendant who thwarts a plaintiff's ability to meet this obligation may forfeit the right to complain about the lack of evidence of his or her financial condition." (*Id*. at p. 995.)

The record does not reflect West Coast thwarted plaintiff's ability to elicit information at trial concerning its financial condition or otherwise waived its right to have the jury consider its financial condition in connection with the punitive damages award. The Trial Subpoena requested production of both witnesses and documents at trial, and two of the witnesses testified at trial. Yet, plaintiff did not ask either of them any questions about West Coast's financial condition.[6] In addition, the record does not show plaintiff brought to the court's attention West Coast's failure to produce documents pursuant to the Trial Subpoena and asked the court to rule that West Coast had waived its right to object to a punitive damages award on that basis. Thus, the trial court here was not asked to—and did not—address waiver at all; it denied the JNOV motion on the ground "the evidence adduced at trial, viewed in the light most favorable to the party securing the verdict, and drawing all reasonable inferences in support of the verdict is sufficient to support the jury's finding of punitive damages."

Given the lack of evidence of defendant's financial condition, the JNOV motion should have been granted as to the punitive damages.

---

[6] Both Gomez and Bernal were called to testify at trial by West Coast. The record does not show plaintiff attempted to explore the extent of their knowledge of West Coast's financial condition; nor does it show that plaintiff ever argued to the court that West Coast failed or refused to produce the requested person most knowledgeable.

Accordingly, the punitive damages award must be vacated, and the underlying judgment against West Coast must be modified accordingly.

DISPOSITION

The postjudgment order denying appellant's JNOV motion is reversed as to the punitive damages award. The superior court is ordered to modify the judgment to eliminate the award of punitive damages. The judgment is affirmed as modified. Each party to bear their own costs in the interest of justice.


GOODING, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.